

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

---

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

June 17, 2024

**Via ECF**
The Honorable Vernon S. Broderick
United States District Court
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 518
New York, NY 10007

        Re: **Morrison et al v. JSP Life Agency Inc. et al.**
            1:23-cv-06943-VSB

Dear Judge Broderick,

    Our office represents Lindon Morrison ("Plaintiff") and we submit this motion jointly with counsel for JSP Life Agency Inc. d/b/a JSP Home Care Services and Jose Nicanor and Nieves Rodriguez (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached during the parties' mediation held on April 4, 2024 and negotiation process between experienced counsel.

    The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiff's counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

    **I.**    **The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

        **a. The Settlement Amount**

    The parties agreed to resolve all claims asserted in this action, including Plaintiff's counsel's attorneys' fees, which are addressed below, for the global amount of $75,000.00.

        **b. Plaintiff's Position**

    Plaintiff commenced this lawsuit alleging, *inter alia*, that he was not paid proper overtime rates of pay and spread of hours compensation in violation of the Fair Labor Standards Act (FLSA) and New York Labor Laws (NYLL).

Plaintiff alleged that he was employed at Defendants' place of business located in 3699 Bainbridge Ave., Bronx, NY 10467 but performed work at the houses of Defendants' clients, from in or around February 2020 until in or around July 2023 as a home health aide, while performing related miscellaneous duties for the Defendants' clients such as but not limited to providing home care, and welfare, companionship, assisting in toileting and grooming and administering medication.

During his employment, Plaintiff alleged that he regularly worked seven (7) days per week from in or around February 2020 until in or around December 2021; four (4) days per week from in or around January 2022 until in or around December 2022 and three (3) days per week from in or around January 2023 until in or around July 15, 2023.

Plaintiff alleged that he regularly worked the following schedule of shifts:

i. beginning at approximately 4:00 p.m. each workday and regularly ending at approximately 8:00 a.m. or later, seven (7) days per week from in or around February 2020 until in or around December 2021;

ii. beginning at approximately 8:00 a.m. each workday and regularly ending the next day at approximately 12:00 p.m. or later for a total of twenty-eight (28) consecutive hours, four (4) days per week from in or around January 2022 until in or around December 2022; and

iii. beginning at approximately 2:00 p.m. and regularly ending at 9:00 p.m. or later, one (1) day per week; and from 8:00 a.m. and regularly ending at 7:00 p.m. or later, one (1) day per week from in or around January 2023 until in or around July 15, 2023,

for a total of approximately one hundred twelve (112) hours per week from in or around February 2020 until in or around December 2022 (accounting for short sleep and quick meal breaks only when possible), and approximately eighteen (18) hours per week from in or around January 2023 until in or around July 15, 2023.

However, Plaintiff alleged that he was compensated at a flat hourly rate of approximately $30.00 per hour for all hours worked from in or around February 2020 until in or around July 15, 2023.

In total, Plaintiff alleged approximately $155,040.00 in unpaid overtime compensation and approximately $14,138.57 in unpaid spread of hours compensation.

During the parties' mediation session, Defendants produced some time and pay records indicating hours worked by and payments made to Plaintiff. However, here exist some issues that Plaintiff raises with respect to the Defendants' records particularly the actual work hours and pay received by Plaintiff.

First, Plaintiff was paid exclusively by direct deposit with no corresponding paystubs or documentation. Further, based on Plaintiff's own copies of the payment transactions, it is evident that (a) Plaintiff was paid at a straight time rate (an average of $3,360.00 per week); and (b) Plaintiff was not compensated any spread of hours.

Second, the timesheets only covered from February 2020 until May 2022 and from September 2022 until April 2023 (missing records: from June 2022 to August 2022). Moreover, based on Defendants' own records, Plaintiff worked more than 100 hours per week from February 2020 until May 2022; more than 40 hours from September 2022 until December 2022; and an average of 24 to 56 overtime hours per week from January 2023 until July 2023

As such, there were *bona fide* factual disputes over the unpaid overtime wages of Plaintiff.

Although Plaintiff was confident that he could prevail on all of his claims should this matter have proceeded to trial, Plaintiff's preference was for a guaranteed outcome via Court-approved settlement. Settlement at this juncture avoids the inherent risks and costs of litigation and allows Plaintiff to recover a substantial amount of his alleged unpaid wages claim – a figure strongly disputed by Defendants – in the near future as opposed to the uncertainty of recovery at a much later date in the future. Based on all of the above, Plaintiff believes that the settlement is a fair and reasonable resolution as to his wage claims.

### c. Defendants' Position

Plaintiff, a home health aide, worked for his own company, Reliable Home Care Provider, LLC, with his own EIN number. He brought his own patient to JSP in mid-January 2020, with whom he had an independent relationship before he came to JSP. It is Defendants' position that Plaintiff came to JSP as an independent contractor so that JSP could provide him with billing services for his patient. Further, Defendants maintain that Plaintiff also set his own hourly rate of $30/hour for his client, which is what he was paid by JSP, and set his own schedule.

Defendants claim that Plaintiff was an independent contractor for the duration of his relationship with JSP, including for the two patients he worked for briefly after his client's case was closed, and was therefore not entitled to overtime pay under either the FLSA or NYLL. While Plaintiff contends that he was "regularly required" to work 112 hours per week from February 2020 through December 2022, JSP would not have permitted Plaintiff to work 112 hours per day, seven days a week, for one of its clients. Further, had Plaintiff been an employee of JSP, he would not have been permitted to work those hours or shifts. That is evidenced by his time sheets for the two subsequent patients he worked for in late 2022 and part of 2023, which show significantly less hours/day and days/week worked.

Moreover, JSP discovered that Plaintiff indicated he was working for his client when his client was out of the country with his mother. JSP therefore believes that Plaintiff may have fabricated his time records with the assistance of his client's mother and that his time records are inaccurate and false. Moreover, this would require an extensive investigation and discovery related to whether Plaintiff worked those hours as claimed.

While Defendants believe that they would ultimately prevail in defeating Plaintiff's claims, Defendants preferred to avoid associated risks with proceeding with the litigation and proceed with

a Court-approved settlement. Defendants believe the settlement is fair and a reasonable resolution of Plaintiff's claims.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $75,000.00. The parties believe that this amount is reasonable considering Plaintiff's claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after a mediation session before a qualified and experienced Court-appointed mediator with all parties present. The parties had genuine, bona fide disputes over the dates of Plaintiff's employment, the hours worked by Plaintiff, the pay received by Plaintiff, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

### II. The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 2 of the Settlement Agreement is appropriately tailored to claims under the FLSA, NYLL and their associated regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiff and Defendants, and the Release is not overbroad such that there is a concern that Plaintiff is releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiff from openly discussing his experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III. Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiff

The parties agreed to a global settlement of $75,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $49,487.33 after the requested attorneys' fees and expenses.

#### b. Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $769.00 for identifiable expenses, which include:

- the Southern District of New York filing fee in this matter: $402.00
- the costs of service of the Summons and Complaint on all Defendants: $367.00.

Additionally, Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($74,231.00), or $24,743.67 in attorneys' fees, as agreed upon in Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $25,512.67.

As such, the settlement funds as broken down into its component parts is as follows:

**Settlement Amount:** $75,000.00
**Attorneys' Expenses:** $769.00
**Net Settlement Amount:** $74,231.00 ($75,000.00 - $769.00)
**Requested Attorneys' Fees:** $24,743.67 ($($74,231.00 / 3)
**Total payable to Attorneys:** $25,512.67 ($24,743.67 + $769.00)
**Total payable to Plaintiff:** $49,487.33 ($75,000.00 - $25,512.67)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

      This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

### IV.   <u>Closing</u>

      In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of the Court-annexed mediation program. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

                                                   Respectfully submitted,

                                                   *Katelyn M. Schillaci*
                                                   Katelyn M. Schillaci, Esq.

4873-6226-4515, v. 1